IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CARL LEDFORD,**

    **Plaintiff,**

    v.

**TROOPER J. ADAMS, et al.**

    **Defendants.**

Civil Action 2:21-cv-390
Chief Judge Algenon L. Marbley
Magistrate Judge Chelsey M. Vascura

**ORDER and REPORT AND RECOMMENDATION**

Plaintiff, Carl Ledford, an Indiana resident proceeding without the assistance of counsel, has submitted a request to file a civil action *in forma pauperis*. (ECF No. 1.)  The Court **GRANTS** Plaintiff's request to proceed *in forma pauperis*.  All judicial officers who render services in this action shall do so as if the costs had been prepaid.  28 U.S.C. § 1915(a).

This matter is also before the Court for the initial screen of Plaintiff's Complaint as required by 28 U.S.C. § 1915(e)(2) to identify cognizable claims and to recommend dismissal of Plaintiff's Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).  Having performed the initial screen, for the reasons that follow, it is **RECOMMENDED** that the Court **DISMISS** this action pursuant to 28 U.S.C. § 1915(e)(2).

**I.**

Plaintiff alleges the following in his Complaint and its attachments.  Plaintiff is indigent and disabled.  (ECF No. 1–1, at PageID 14.)  He is also an African American resident of Indiana.

(*Id*. at PageID 1, 13.) On November 14, 2020, Plaintiff was driving his personal vehicle eastbound on state Route 33 in Ohio. (*Id*. at PageID 10.) At approximately 3:04 a.m., Defendant Trooper J. Adams ("Trooper Adams") drove behind Plaintiff in a law enforcement vehicle with the headlights turned off for several miles. (*Id*. at PageID 10–11.) Although Plaintiff made several lane changes so that Trooper Adams could pass Plaintiff's car, Trooper Adams continued to trail Plaintiff, turning his headlights on only after he changed lanes to remain behind Plaintiff and while driving dangerously close to Plaintiff's bumper. (*Id*. at PageID 11.) Trooper Adams eventually initiated his lights and siren and stopped Plaintiff even though Plaintiff had not committed any traffic violations. (*Id*.) During the traffic stop, Trooper Adams indicated that he had pulled Plaintiff over for swerving. (*Id*. at PageID 11.) Trooper Adams became upset when Plaintiff stated that he did not wish to discuss where he was travelling and when Plaintiff criticized Trooper Adams for driving dangerously. (*Id*. at PageID 12.) Plaintiff provided Trooper Adams with his license, registration, and proof of insurance. (*Id*.) Trooper Adams issued Plaintiff a citation for driving in a marked lane in violation of Ohio Revised Code Section 4511.33. (*Id*. at PageID 30.)

On November 16, 2020, Plaintiff filed a motion to dismiss the traffic case against him. (*Id*. at PageID 15.) On December 9, 2020, Plaintiff appeared *pro se* in Marysville Municipal Court to contest the illegal traffic citation. (*Id*.) Judge Michael Grigsby presided over a bench trial before finding Plaintiff guilty of the traffic infraction for which he was cited. (*Id*. at PageID 31.) Plaintiff was fined fifty-eight dollars and required to pay one hundred dollars in court costs. (*Id*.) Plaintiff also incurred travel expenses and wear and tear on his vehicle. (*Id*. at PageID 13.)

On January 28, 2021, Plaintiff initiated this § 1983 action. Plaintiff alleges that Trooper Adams's traffic stop violated his Fourth Amendment right to be free from searches and seizures;

that Trooper Adams engaged in racial profiling; and that Trooper Adams failed to inform Plaintiff of his *Miranda* rights. (*Id*. at PageID 21–22, 23, 13.) Plaintiff additionally alleges that Trooper Adams committed perjury in order to participate and contribute to a RICO violation and engaged in malicious prosecution. (*Id*. at PageID 22, 23.) Plaintiff also names as defendants the State of Ohio, the Ohio State Highway Patrol,[1] Union County, the city of Marysville, and the Marysville Police Department and appears to allege *Monell* claims against these defendants. (*Id*. at PageID 25–26, 9, 24–25.) Plaintiff names as defendants Trooper Adams' Chief or Supervisor (name unknown), the Sheriff of Union County, and the Mayor of Marysville and appears to allege supervisory liability and conspiracy claims against them. (*Id*. at PageID 24–25.) He names all the individual defendants (Trooper Adams, Trooper Adams' Chief or Supervisor, the Sheriff of Union County, and the Mayor of Marysville) in their individual and official capacities.

Although he does not include the Marysville Municipal Court in the case caption, Plaintiff contends that it too engaged in Constitutional wrongdoing. (*Id*. at PageID 15.) Specifically, Plaintiff alleges that the Marysville Municipal Court failed to inform him of his *Miranda* rights, to provide him with court-appointed counsel, to honor his rights to a jury trial, to officially identify him, and to swear in any witnesses in court. (*Id*. at PageID 16.) Plaintiff further alleges that the Marysville Municipal Court engaged in abuse of process and malicious prosecution. (*Id*.)

Plaintiff seeks nominal, compensatory, and punitive damages as well as injunctive relief. (*Id*. at PageID 29.)

---

[1] Plaintiff names "the Ohio State Trooper/Police Department." (ECF No. 1 at PageID 4.) The undersigned presumes that Plaintiff is referring to the Ohio Highway Patrol.

**II.**

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id.* (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e), which provides in pertinent part as follows:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
> \* \* \*
>
> (B) the action or appeal--
>     (i) is frivolous or malicious;
>     (ii) fails to state a claim on which relief may be granted; or . . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31. Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted. *See Hill v. Lapin,* 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rules of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)).

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a

4

cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Further, a complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In considering whether this facial plausibility standard is met, a Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citations omitted). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). In addition, the Court holds *pro se* complaints "to less stringent standards than formal pleadings drafted by lawyers." *Garrett v. Belmont Cnty. Sheriff's Dep't*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. Apr. 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

With these principles in mind, the undersigned assesses Plaintiff's claims.

## III.

### A. The State of Ohio and The Ohio State Highway Patrol

Plaintiff's claims against the State of Ohio and the Ohio State Highway Patrol are barred. Under the Eleventh Amendment, federal courts lack jurisdiction over suits brought by private citizens against a state or its instrumentalities unless the state explicitly consents to the suit or

5

Congress properly abrogates the States' sovereign immunity. *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). Ohio has not waived its immunity. *McCormick v. Miami Univ.*, 693 F.3d 654, 664 (6th Cir. 2012). And Congress did not abrogate the State's Eleventh Amendment immunity when it enacted § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67 (1989). Accordingly, the State of Ohio is immune from suit for money damages and injunctive relief. *See Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993) (The Eleventh Amendment "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments[.]") (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984)).

The Ohio Highway Patrol is an arm of the State of Ohio, and thus, it too is entitled to immunity under the Eleventh Amendment. *Mattox v. City of Jefferson*, No. 1:04 CV 2257, 2007 WL 120651, at *2 (N.D. Ohio Jan. 10, 2007) (quoting *Rankins v. Northcoast Behavioral Health Care,* No. 1:06 CV 1278, 2006 U.S. Dist. LEXIS 72664 (N.D. Ohio 2006)); *see also Davis v. Maughmer*, No. C2-00-1415, 2002 WL 484853, at *3 (S.D. Ohio Mar. 5, 2002) ("[C]laims against the Ohio State Highway Patrol are claims against the State of Ohio, which is entitled to sovereign immunity under the Eleventh Amendment."). For these reasons, the undersigned **RECOMMENDS** that these claims be **DISMISSED**.

B.  **Individual-Capacity Claims Against the Sheriff of Union County, the Mayor of Marysville, and Trooper Adams' Chief or Supervisor**

The undersigned concludes that Plaintiff's individual-capacity claims against the Sheriff of Union County, the Mayor of Marysville, and Trooper Adams' Chief or Supervisor cannot go forward. In order to plead a cause of action under § 1983, a plaintiff must plead two elements: "(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542

6

F.3d 529, 534 (6th Cir. 2008) (citing *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006)). To sufficiently plead the second element, a plaintiff must allege "personal involvement." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (citation omitted). This is because "§ 1983 liability cannot be imposed under a theory of *respondeat superior*." *Id.* (citation omitted). Thus, to find supervisory liability under § 1983, "[a]t a minimum, [ ] plaintiff must show that a supervisory official at least implicitly authorized, approved [or] knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Turner v. City of Taylor*, 412 F.3d 629, 643 (6th Cir. 2005).

Plaintiff's Complaint fails to provide sufficient factual content or context from which the Court could reasonably infer that the Sheriff of Union County, the Mayor of Marysville, or Trooper Adams' Chief or Supervisor were personally involved in any violation of Plaintiff's rights. Plaintiff's claims appear to stem from his encounter with Trooper Adams during a traffic stop. Plaintiff does not allege that these defendants were present during that traffic stop. At best, it appears that he alleges that they were liable as supervisors. But the Sheriff of Union County and the Mayor of Marysville would not have supervised Trooper Adams, a member of the Ohio State Highway Patrol. And liability cannot lie against Trooper Adams' Chief or Supervisor solely because of his or her supervisor status.

Plaintiff's conspiracy claims against these defendants are similarly lacking. A civil conspiracy is a cognizable § 1983 claim. *Goldwire v. Chambers-Smith*, No. 2:20-CV-2673, 2020 WL 6158648, at *2 (S.D. Ohio Oct. 21, 2020) (citing *Spadafore v. Gardner*, 330 F.3d 849, 853–54 (6th Cir. 2003)). Such claims, however, must be pleaded with "some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Id*. (citing *Jackim v. Sam's E., Inc.*, 378 F. App'x 556, 563

(6th Cir. 2010) (internal quotation marks and citation omitted). Here, Plaintiff's cursory conspiracy references fall far short. For these reasons, the undersigned **RECOMMENDS** that these claims be **DISMISSED**.

C. **Official-Capacity Claims Against the Sheriff of Union County, the Mayor of Marysville, and Claims Against Union County and the City of Marysville**

Nor should Plaintiff's official-capacity claims against the Sheriff of Union County and the Mayor of Marysville, and Plaintiff's claims against Union County and the City of Marysville go forward. "While '[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,' individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (quoting *Kentucky v. Graham,* 473 U.S. 159, 165 (1985)). Therefore, "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Thus, the analysis of Plaintiff's official-capacity claims against the Sheriff of Union County and the City of Marysville is coextensive with the analysis of his claims against Union County and the City of Marysville.

With regard to Plaintiff's claims against those entities, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A plaintiff may prove an unconstitutional "policy" or "custom" by demonstrating one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or

acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga,* 398 F.3d 426, 429 (6th Cir. 2005)).  In addition, a local government entity will not be liable under § 1983 for inadequate training unless a plaintiff shows that the training program is inadequate to the task an officer must perform; that the inadequacy is the result of deliberate indifference; and that the inadequacy is "closely related to" or "actually caused" the plaintiff's injury.  *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing *City of Canton v. Harris,* 489 U.S. 378, 390–91 (1989) and *Hill v. McIntyre,* 884 F.2d 271, 275 (6th Cir.1989)).

Plaintiff alleges that Trooper Adams violated his constitutional rights during a traffic stop.  Plaintiff appears to allege that Union County and the City of Marysville did not adequately train their police officers.  But Trooper Adams is a member of the Ohio State Highway Patrol— he would not have been trained by Union County or the City of Marysville.  Thus, Plaintiff does not allege that the allegedly inadequate training programs run by these defendants actually caused any alleged violation of his rights.  Because he fails to state plausible claims, the undersigned **RECOMMENDS** that these claims be **DISMISSED**.

**D.     The Marysville Police Department**

Plaintiff's claims against the Marysville Police Department also should not go forward.  To the extent Plaintiff maintains that the Marysville Police Department failed to adequately train its officers, Trooper Adams is not a Marysville Police Officer.  In addition, police departments are not *sui juris;* they are merely sub-units of the municipalities they serve.  *See Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir. 1994) (police departments are not legal entities that can be sued).  *See also Anderson v. Hamilton Cty.*, 1:09–CV–798, 2011 WL 5387503, at *3 (S.D. Ohio Oct. 12, 2011); *Williams v. Dayton Police Dep't,* 680 F.Supp. 1075,

1080 (S.D. Ohio 1987). For these reasons, the undersigned **RECOMMENDS** that these claims be **DISMISSED**.

E.    **Marysville Municipal Court**

Plaintiff's claims against the Marysville Municipal Court should likewise be dismissed. Like police departments, Ohio courts are not *sui juris*. *See Williams v. City of Columbus, Ohio*, 892 F. Supp. 2d 918, 923 (S.D. Ohio 2012) (dismissal of the municipal court in a § 1983 and Title VII action alleging racial and sexual harassment "because under Ohio law, Ohio courts are not *sui juris*"); *Jones v. Singer*, No. 3:16-CV-142, 2017 WL 175798, at *1 (S.D. Ohio Jan. 17, 2017) (dismissal of § 1983 claims against an Ohio Court of Common Pleas, in part, because the court was not *sui juris*). For these reasons, the undersigned **RECOMMENDS** that these claims be **DISMISSED**.

F.    **Trooper Adams**

1.    **Official-Capacity Claims**

Plaintiff brings § 1983 claims against Trooper Adams and in his official capacity. "Official-capacity suits . . . 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham,* 473 U.S. 159, 166 (1985) (quoting *Monell,* 436 U.S. at 691 n. 55). Plaintiff's official-capacity claims against Trooper Adam, therefore, constitute claims against the Ohio State Highway Patrol. Accordingly, to the extent Plaintiff seeks money damages for these claims, they are barred by the Eleventh Amendment. *See Oliver v. Ohio State Highway Patrol*, No. 5:19-CV-164, 2019 WL 3006431, at *2 (N.D. Ohio July 10, 2019) ("The State of Ohio's immunity to suit under § 1983 extends to the OSHP and OSHP troopers sued in their official capacities."); *Mattox,* 2007 WL 120651, at *2 (the OSHP is an arm of the State of Ohio and entitled to immunity under the Eleventh Amendment,

10

as are employees of the OSHP sued in their official capacities which is essentially a suit against the State of Ohio) (citations omitted).

The undersigned also finds that Plaintiff's official-capacity claims for injunctive relief cannot go forward. To prevail on a claim for injunctive relief, the plaintiff must show that: (1) he is likely to succeed on the merits, (2) he will suffer irreparable injury in the absence of an injunction, (3) the injunction will not cause substantial harm to others, and (4) the injunction will serve the public interest. *Mattox,* 2007 WL 120651, at *2 (citations omitted). The United States Supreme Court has explained that injunctive relief is only appropriate where the Plaintiff can show a "real or immediate threat that the plaintiff will be wronged again—a 'likelihood of substantial and immediate irreparable injury.'" *Id*. (citing *Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 (1983) (quoting *O'Shea v. Littleton,* 414 U.S. 488, 502 (1974)). In *Lyons,* after being stopped for a traffic violation, the non-threatening plaintiff-respondent was subjected to a choke hold and was injured. *Lyons*, 461 U.S. at 97-98. Lyons sought injunctive relief against the city to prevent the use of choke holds under circumstances that do not threaten death or seriously bodily harm. *Id.* at 98, 100. The Court held that it was without jurisdiction to entertain Lyon's claim for injunctive relief because the respondent could not show that he was in immediate danger of irreparable injury. *Id.* at 105.

Lyons is apposite. Plaintiff, a resident of Indiana, does not plead, and the undersigned is unable to imagine that he will have any future contact with the Ohio State Highway Patrol, and thus, he is unable to establish a real and immediate threat that the Ohio State Highway Patrol will illegally stop him while driving or otherwise interfere with his rights. Consequently, Plaintiff's official-capacity claims against Trooper Adams seeking injunctive relief cannot be permitted to proceed. *See Farm Lab. Org. Comm. v. Ohio State Highway Patrol*, 95 F. Supp. 2d 723, 732

11

(N.D. Ohio 2000), *aff'd and remanded*, 308 F.3d 523 (6th Cir. 2002) (finding that named plaintiffs lacked standing for class-wide injunctive relief because they had been stopped only once and there was not a sufficient likelihood that they would be subjected to similar practices again in the future). For these reasons, the undersigned **RECOMMENDS** that these claims be **DISMISSED**.

    **2.    Individual-Capacity Claims**

    **a.    *Miranda* Rights**

Plaintiff fails to state a claim for relief under § 1983 on the basis that Trooper Adams failed to provide him with *Miranda* warnings. The Self-Incrimination Clause of the Fifth Amendment provides that "[n]o persons . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda v. Arizona,* 384 U.S. 436, 444–45 (1966), the United States Supreme Court held that a suspect must be informed about his or her right against self-incrimination. But the obligation to administer a *Miranda* warning only arises when a defendant is in custody and being interrogated. *Id.*

Generally, traffic stops are non-custodial and do not trigger the obligation to administer *Miranda* warnings. *Berkemeer v. McCarty*, 468 U.S. 420, 437–38 (1984). Traffic stops tend to be noncustodial because they are usually "brief, non-threatening, and conducted in the presence of others;" but not all traffic stops follow this rubric and a more coercive stop may trigger an obligation under *Miranda*. *Id.* In *Swanson*, the Sixth Circuit Court of Appeals outlined the factors for when a vehicle stop has become so coercive as to become custodial in nature. *United States v. Swanson*, 341 F.3d 524, 529 (6th Cir. 2003). These factors include: (i) whether a reasonable person in the defendant's position would feel free to leave; (ii) the purpose of the questioning; (iii) whether the place of the questioning was hostile or coercive; (iv) the length of

12

questioning; and (v) other indicia of custody such as whether the suspect was told he was free to leave, could move freely during questioning, and whether the defendant initiated the contact with police or agreed to answer some questions. *Id.* None of these factors are dispositive; the test is the totality of the circumstances. *Id.*

In this case, Plaintiff does not allege facts that suggest that his encounter with Trooper Adams constituted anything more than a routine traffic stop. He alleges that Trooper Adams pulled him over on a public thoroughfare and that he told Trooper Adams that he did not want to discuss where he was travelling. (ECF No. 1–1, PageID 11–12). In short, he does not allege that he was questioned during circumstances that were coercive enough to constitute custody. For that reason, Plaintiff fails to allege that Trooper Adams was obligated to provide him with a *Miranda* warning.

Nevertheless, even if Plaintiff did allege such facts, a "mere failure to give *Miranda* warnings does not, by itself, violate a suspect's constitutional rights . . . ." *United States v. Patane*, 542 U.S. 630, 641 (2004). Indeed, a *Miranda* claim only becomes actionable under § 1983 when a statement elicited in the absence of those warnings is used in a criminal proceeding. *Chavez v. Martinez*, 538 U.S. 760, 767 (2003) (internal citations omitted). As the Sixth Circuit has made clear, "'mere coercion does not violate the . . . Self-Incrimination Clause absent use of the compelled statements in a criminal case.' It is only once compelled incriminating statements are used in a criminal proceeding . . . that an accused has suffered the requisite constitutional injury for purposes of a § 1983 action." *McKinley v. City of Mansfield*, 404 F.3d 418, 430 (6th Cir. 2005) (quoting *Chavez*, 538 U.S. at 772-73); *see also Burrell v. Virginia*, 395 F.3d 508, 514 (4th Cir. 2005) (dismissing § 1983 claim where the complaint failed to indicate that the plaintiff's statements were used against him in a court proceeding); *Weedman*

*v. Johnson*, No. 3:17-CV-762-DJH, 2019 WL 1897480, at *2 (W.D. Ky. Apr. 29, 2019) (same). Thus, to state a claim, Plaintiff must allege that not only did Trooper Adams fail to recite a *Miranda* warning when required to do so, he must also allege that Trooper Adams introduced evidence that was obtained from Plaintiff in violation of his *Miranda* rights in a court proceeding. Plaintiff does not allege that any statements that he made to Trooper Adams were used against him during his bench trial. Thus, he fails to state a claim upon which relief can be granted and the undersigned **RECOMMENDS** that these claims be **DISMISSED**.

    b.    **Fourth Amendment– Terry Stop**

  Plaintiff's § 1983 Fourth Amendment claim is barred by the doctrine described in *Heck v. Humphries*, 512 U.S. 477 (1994). The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "A warrantless search or seizure is 'per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *United States v. Roark*, 36 F.3d 14, 17 (6th Cir. 1994) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One of those exceptions is an investigative stop— or *Terry* stop—a "temporary, involuntary detention[ ] which must be predicated upon 'reasonable suspicion.'" *United States v. Dickens*, No. 17-5721, 2018 WL 4203481, at *2 (6th Cir. Sept. 4, 2018) quoting *United States v. Pearce*, 531 F.3d 374, 380 (6th Cir. 2008)). The Sixth Circuit applies a "two-step conjunctive analysis to determine whether police action falls within the exception for *Terry* stops." *United States v. Powell*, 210 F.3d 373 (6th Cir. 2000) (citing *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993)). In the first step, a Court will "ascertain whether the officer had a 'reasonable suspicion' supported by 'specific and articulable facts' that the suspect was involved in criminal activity.'" *Id.* (citing *United States v. Hardnett*,

14

804 F.2d 353, 356 (6th Cir. 1986)). At the second step, a court must analyze "'whether the degree of intrusion into the suspect's personal security' was reasonably related to the character of the reasonable suspicion." *Powell*, 210 F. 3d 373 (quoting *Garza*, 10 F.3d at 1245).

Plaintiff alleges that Trooper Adams told him that he pulled him over because he had been swerving. (ECF No.1–1, at PageID 11.) Ohio Revised Code § 4511.33 provides, in pertinent part, that a vehicle shall be driven, as nearly practicable as possible, entirely within a single lane or line of traffic. Ohio Rev. Code § 4511.13. An officer may legitimately stop a vehicle on probable cause that a traffic violation has occurred. "When law enforcement officers witness a traffic violation, they may stop the driver and his car . . . . [T]here is nothing 'unreasonable' about stopping a vehicle whose driver has just committed a traffic violation." *United States v. Street*, 614 F.3d 228, 232 (6th Cir. 2010) (citations omitted). Plaintiff also alleges that he was convicted of violating Ohio Revised Code § 4511.13 after a bench trial in the Marysville Municipal Court. (ECF No. 1–1, at PageID 31.)

That conviction constitutes a final determination that this Court cannot disturb or invalidate. In *Heck*, the Supreme Court held that a plaintiff may not raise claims in a § 1983 action if a judgment on the merits of those claims would affect the validity of his conviction and sentence unless the conviction and sentence had already been set aside. 512 U.S. at 486–87; *see also Edwards v. Balisok,* 520 U.S. 641, 648 (1997) (clarifying that the Heck rule applies regardless of the form of remedy sought). "*Heck* applies as much to prisoners in custody (a habeas prerequisite) as to persons no longer incarcerated." *Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir. 1995). *Heck* also applies to a § 1983 claim based on alleged violations of the Fourth Amendment if success on the § 1983 claim will undermine a conviction. *Id*.

15

In this case, if Plaintiff were to prevail on his claim that Trooper Adams lacked reasonable suspicion to support the *Terry* stop (i.e., Plaintiff was not swerving), it would necessarily cast doubt on Plaintiff's conviction in the Marysville Municipal Court for violating Ohio Revised Code § 4511.13 (i.e., swerving or failing to drive within a single lane or line of traffic). *See Hutson v. Felder*, No. 5:07–183–JMH, 2008 WL 4186893, at *3 (E.D. Ky. Sept. 10, 2008) (finding that plaintiff's Fourth Amendment claim was barred by *Heck* because she was convicted of speeding and that conviction conclusively established that the officers had probable cause to make a traffic stop). For that reason, Plaintiff's claim is barred unless he alleges that his conviction or sentence has already been invalidated. Because he makes no such allegations, it is **RECOMMENDED** that these claims be **DISMISSED**.

    c.  **Fourth Amendment – Malicious Prosecution**

Plaintiff has failed to plausibly state a claim for malicious prosecution against Trooper Adams. The Sixth Circuit recognizes a constitutional claim of malicious prosecution under the Fourth Amendment, encompassing wrongful investigation, prosecution, conviction, and incarceration. *Barnes v. Wright*, 449 F.3d 709, 715–16 (6th Cir. 2006). The federal cause of action for malicious prosecution has four elements: (1) the defendant made, influenced, or participated in a decision to prosecute the plaintiff; (2) there was a lack of probable cause for the prosecution; (3) as a result of a legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 309 (6th Cir. 2010). Here, Plaintiff does not allege that the bench trial for a traffic violation was resolved in his favor. For these reasons, the undersigned **RECOMMENDS** that these claims be **DISMISSED**.

16

### d. Equal Protection– Racial Profiling

Plaintiff's Equal Protection claim under § 1983 should be dismissed because Plaintiff has failed to adequately allege that his Equal Protection rights were violated. The Equal Protection Clause of the Fourteenth Amendment "protects citizens from police action . . . based solely on impermissible racial considerations." *United States v. Avery*, 137 F.3d 343, 353 (6th Cir. 1997). But "to prevail under the Equal Protection Clause, [a plaintiff] must prove the decision makers in *his* case acted with discriminatory purpose." *Id*. at 355 (quoting *McClesky v. Kemp,* 481 U.S. 279, 292 (1987)). And he must prove by "requisite direct, circumstantial, or statistical evidence that he was the target of racial profiling." *United States v. Saucedo*, 226 F.3d 782,790 (6th Cir. 2000) (citing *Avery*, 137 F.3d at 355-58). In other words, he must provide more than speculation. *Id*.

Plaintiff's Complaint does not meet this standard. Plaintiff fails to plead that Trooper Adams was motivated by racial animus. He does not, for instance, allege that Trooper Adams made comments or gestures that could reasonably be construed as suggesting animus. Plaintiff alleges only that Trooper Adams stated that he pulled him over for swerving and that Trooper Adams became upset when Plaintiff refused to discuss his travel history and when Plaintiff criticized Trooper Adams' driving. (ECF No. 1–1, at PageID 11, 12.)

Nor does Plaintiff adequately allege that similarly situated persons were treated differently. *See Bah v. Attorney Gen. of Tenn.*, 610 F. App'x 547, 554 (6th Cir. 2015) ("In order to make out an equal protection claim on the basis of selective enforcement, a plaintiff must demonstrate that someone similarly situated [—]but for the illegitimate classification used by the government actor[—]was treated differently.") (quoting *Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004)). Plaintiff alleges: "[o]n information and belief, since as far back as time records,

17

the State of Ohio, in general, has had a policy, custom, or practice of harassing, stopping, and ticketing, or arresting, black, or minority individuals, for non-violent, quality of life crimes which would otherwise be charged as infractions." (ECF No. 1–1, at PageID 28.) But such bare assertions, without additional factual development, do not suffice. *See Graves v. Burns*, No. 3:15-CV-712-DJH, 2016 WL 3748526, at *5 (W.D. Ky. July 8, 2016) (dismissing a plaintiff's Equal Protection claims under § 1915(e), in part, because the Complaint tendered naked assertions that she was racially profiled when stopped without additional factual development). For these reasons, the undersigned **RECOMMENDS** that these claims be **DISMISSED**.

      3.      **RICO Claims**

Plaintiff's RICO claims against Trooper Adams should not proceed. A plaintiff seeking to advance a civil RICO claim "must plead the following elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (quoting *Sedima, S.P.R.L. v. Imrex* Co., 473 U.S. 479, 496 (1985)). Further, any such claim must allege an illicit agreement "to participate directly or indirectly in the affairs of an enterprise through the commission of two or more predicate crimes." *Heinrich v. Waiting Angels Adoption Servs.*, 668 F.3d 393, 411 (6th Cir. 2012) (quoting *United States v. Sinito*, 723 F.2d 1250, 1261 (6th Cir. 1983)). Finally, a plaintiff advancing a civil RICO claim must allege injury to business or property. *See* 18 U.S.C. § 1964(c).

In this case, Plaintiff alleges that Trooper Adams committed perjury in order to participate and contribute to a RICO violation. (ECF No. 1–1, at PageID 22.) Those allegations lack any additional factual or legal foundation. Therefore, the undersigned **RECOMMENDS** that these claims be **DISMISSED**.

**G.      Trooper Adams' Chief or Supervisor**

The undersigned concludes that Plaintiff's official-capacity claims against Trooper Adams' Chief or Supervisor should also be dismissed. To the extent Plaintiff seeks money damages for these official-capacity claims, they are barred by the Eleventh Amendment. *See Oliver*, 2019 WL 3006431, at *2; *Mattox,* 2007 WL 120651, at *2. To the extent Plaintiff seeks injunctive relief, as previously explained, he fails to allege a likelihood of substantial and immediate irreparable injury. *Id*.

**IV.**

The Court **GRANTS** Plaintiff's request to proceed *in forma pauperis*. (ECF No. 1.) In addition, for the reasons set forth herein, the undersigned **RECOMMENDS** that the Court **DISMISS** this action pursuant to § 1915(e) for failure to state a claim on which relief may be granted.

**PROCEDURE ON OBJECTIONS**

If any party objects to this R&R, that party may, within fourteen (14) days of the date of this R&R, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the R&R or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Disrict Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R *de novo*, and also operates as a

waiver of the right to appeal the decision of the District Court adopting the R&R.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


                                      /s/ *Chelsey M. Vascura*
                                      CHELSEY M. VASCURA
                                      UNITED STATES MAGISTRATE JUDGE